**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CARMA TECHNOLOGY, CORP., *and* CARMA TECHNOLOGY, LTD.,<br>*Plaintiffs*,<br>v.<br>UBER TECHNOLOGIES, INC., UBER FREIGHT HOLDING CORPORATION, *and* UBER FREIGHT US LLC,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:25-CV-00029-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is Defendants' Motion to Strike Sean O'Sullivan's Untimely Declaration & Earlier Priority Date. **Dkt. No. 268.**[1] The motion focuses on what Uber considers Carma's sudden change of the priority date for the asserted patents in response to Uber's motion for summary judgment about alleged § 102(g) prior art, from February 12, 2007, to September 29, 2006. Asserting Carma failed to timely disclose that 2006 date, Uber asks the Court to hold Carma to the later date. Having considered the Motion and related briefing (Dkt. Nos. 327, 334, 351), the Motion is **GRANTED**.

## I. BACKGROUND

Carma alleges infringement by Uber of five related patents directed to improvements in a shared transportation network. First Am. Compl., Dkt. No. 58 (asserting claims of U.S. Patents 7,840,427, 10,741,071, 10,916,138, 11,017,668, and 11,164,456). Generally, the patents teach a

[1] Only Uber Freight US LLC remains a defendant. *See* R. & R., Dkt. No. 305 (recommending dismissal of Uber Freight Holding Company and Uber Technologies, Inc., under Fed. R. Civ. P. 12(b)(3)); Order, Dkt. No. 358 (adopting the R. & R.). *But see* Mot. for Reconsideration, Dkt. No. 360.

real-time marketplace for transportation capacity. The disclosed systems and methods monitor available vehicle capacity and transportation demand and match them together. *See, e.g.*, ’427 Patent at [57].

Carma alleges the asserted claims read on Uber’s ridesharing services offered through its mobile phone application. First Am. Compl., Dkt. No. 58 ¶ 34. These services, says Carma, provide the ability (1) to match a passenger and driver and allow coordination and communication through a proxy server, (2) for Uber to solicit and aggregate ratings based on the passenger and driver trip experience, (3) for drivers to pick up passengers on predetermined routes, and (4) to monitor the safety of ongoing rides. *Id.* Carma also alleges Uber’s “Delivery Products,” like Uber Eats and Uber Freight, have these same features. *Id.* ¶ 35.

In July 2026, Uber sought summary judgment that something called the GoLoco system qualifies as prior art under pre-AIA 35 U.S.C. § 102(g). *See* Defs.’ Mot. for Summ. J., Dkt. No. 184. Like Uber, GoLoco “is a service that helps people quickly arrange ride sharing between friends, neighbors, and colleagues.” Chase Rep., Dkt. No. 184-2 ¶ 24. According to Robin Chase, Uber’s technical expert and the inventor of the GoLoco system, she conceived of the system before the priority date of the patents, then asserted by Carma to be February 12, 2007, and diligently reduced it to practice. *See id.* ¶¶ 18–22. Thus, says Uber, the Court should hold the GoLoco system is prior art under § 102(g). Defs.’ Mot. for Summ. J., Dkt. No. 184 at 4.

In its opposition to the summary judgment motion, Carma gives four reasons why summary judgment would be improper. First, says Carma, Uber failed to timely disclose its § 102(g) theory, so the Court should exclude it. Carma’s Opp., Dkt. No. 224 at 3–4. Second, Uber failed to disclose documents allegedly corroborating the GoLoco timeline and functionality, so (again) the Court should exclude it. *Id.* at 4. Third, there are factual disputes about the GoLoco functionality that

preclude summary judgment. *Id.* at 4–5. Finally, Carma contends that, despite Chase's timeline about development of GoLoco, Carma's patents predate it. *Id.* at 5–6.

Uber's Motion to Strike concerns this last argument—that, as between Carma and GoLoco, Carma was the first to conceive and then diligently reduce its invention to practice, so the GoLoco system cannot be prior art. For most of this case, Carma asserted a priority date for the asserted patents of February 12, 2007. For example, in its original infringement contentions, Carma said "[t]he asserted claims of the patents-in-suit are entitled to a priority date at least as early as February 12, 2007." Infringement Contentions, Dkt. No. 268-2 at 5. *See also* Carma's Resps. to Uber's First Set of Interrogs., Dkt. No. 268-5 at 6 (stating "the earliest priority date for each asserted claim is the date of provisional application No. 60/900,808, filed on February 12, 2007"); Valerdi Rebuttal Rep., Dkt. No. 268-7 ¶¶ 7–8 (assuming, for his analysis, the "invention date" of the asserted patents is February 12, 2007).

But, according to Uber, Carma changed its position in August 2026. In response to Uber's summary judgment motion, Carma included a declaration from Sean O'Sullivan, the patents' named inventor, stating that two documents Carma produced during fact discovery reflect "concepts" he "conceived of as of Sept. 29, 2006" and later included in his provisional application. *See* O'Sullivan Decl., Dkt. No. 224-2 ¶¶ 7, 11–12. Uber, however, complains these dates were not identified during fact discovery, either in Carma's infringement contentions or its discovery responses. Dkt. No. 268 at 1–2.

Carma does not dispute Uber's chronology or its failure to disclose the September 30, 2006 date before its summary judgment opposition. Instead, Carma complains that Uber first raised its § 102(g) theory in the motion. Dkt. No. 327 at 4. Moreover, says Carma, Uber did not produce its § 102(g) evidence until four days before the close of discovery, in an expert report no less, and

some of it still has not been "formally produced." *Id.* at 1. Carma explains that, because the earliest date Uber identified in discovery for the GoLoco system was April 2, 2007, it had no concern about an earlier priority date. *Id.* Moreover, says Carma, it told Uber it intended to introduce evidence predating the provisional application's filing date concerning conception and reduction to practice. *Id.* at 12. Ultimately, says Carma, Uber should blame itself for failing to timely disclose its § 102(g) theory, ignoring Carma's disclosures, and failing to review Carma's evidence. *Id.* at 2.

## II. LEGAL STANDARD

### A. The Local Patent Rules

The Local Patent Rules require a party claiming patent infringement to identify as part of its "Disclosure of Asserted Claims and Infringement Contentions . . . the priority date to which each asserted claim allegedly is entitled." P.R. 3-1(e). The party must also produce "[a]ll documents evidencing the conception, reduction to practice, design and development of each claimed invention, which were created on or before . . . the priority date identified pursuant to P.R. 3-1(e)." P.R. 3-2(b).

"A trial court may sanction a party's failure to comply with a scheduling order by excluding evidence." *Neff v. Ford*, 163 F.3d 1354, 1354 (5th Cir. 1998) (citing Fed. R. Civ. P. 16(f)). "In exercising its discretion to exclude such evidence, the trial court should consider (1) the explanation, if any, for the party's failure to comply with the scheduling order; (2) the prejudice to the opposing party; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the evidence." *Id.* (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

### B. Exclusion of Evidence for Incomplete or Insufficient Discovery Responses

The rules of procedure "impose[] an obligation on parties to conduct a reasonable inquiry

into the factual basis of their discovery responses and requires that a party who 'responded to an interrogatory . . . supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . .'" *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012) (quoting Fed. R. Civ. P. 26(e)(1) and citing Rule 26(b)). To that end, district courts may exclude evidence not produced in compliance with a proper discovery request. *Id. See also Innogenetics, N.V. v. Abbott Labs.,* 512 F.3d 1363, 1375–76 (Fed. Cir. 2008) (affirming the district court's exclusion of a prior-art patent disclosed on the final day of discovery because "the time for depositions had passed" the party asking to use the patent did not discuss it in an expert report, identify it in response to interrogatories on anticipation, or mention it in the final pretrial conference).

"Contention interrogatories . . . serve an important purpose in helping to discover facts supporting the theories of the parties." *Woods*, 692 F.3d at 1280. "Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation." *Id.* To be sure, "answers to contention interrogatories evolve over time as theories of liability and defense begin to take shape; answers to those interrogatories may not come into focus until the end of discovery." *Id.* But "Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes." *Id.*

## III. DISCUSSION

As an initial matter, Carma had no obligation to state a conception date under the local patent rules. P.R. 3-1(e) only requires the *priority date* to which asserted claims are allegedly entitled, which is the earliest filing date of an application—not a date of conception or reduction to practice. In fact, the rules acknowledge that distinction by requiring the disclosure of "all

documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created *on or before* the date of application for the patent in suit or *the priority date identified pursuant to P. R. 3-1(e)*, whichever is earlier." P.R. 3-2 (emphasis added). Notably, however, P.R. 3-2 is merely an obligation to disclose documents—not an obligation to identify dates.

However, Uber's interrogatories did ask for those dates. In its first interrogatory, Uber asked Carma to,

> [f]or each Asserted Claim, identify the earliest priority date to which You contend that Asserted Claim is entitled, including . . . *an identification of the claim's date of conception, the date of first actual reduction to practice of the claim* [and] all acts Plaintiffs contend represent diligence from conception to first actual reduction to practice and diligence from conception to constructive reduction to practice.

Carma's Resp. to Interrogs., Dkt. No. 268-5 at 4 (emphasis added).

Carma responded to the interrogatory four times. In its original response, Carma simply stated, "The earliest priority date for each Asserted Claim is the date of Provisional Application No. 60/900,808, filed on February 12, 2007." Carma's Resp. to Interrogs., Dkt. No. 268-5 at 5. Later, Carma provided a short history of O'Sullivan's development of the technology, including a statement that

> In 2006, Mr. O'Sullivan acquired a controlling interest in an Irish GIS (Geographic Information Systems) company named MapFlow. Mr. O'Sullivan used the resources and engineers of MapFlow to develop a prototype of his rideshare automation tool. From MapFlow, he spun out a company called Avego (later renamed to Carma) to further develop and market this idea.

*Id.* 5–6. In March 2026, Carma identified additional documents that it thought "corroborate conception, diligence and reduction to practice before Feb. 12, **2008**." *Id.* at 7–8 (emphasis added). Finally, in June 2026, Carma identified additional documents and testimony, although it didn't say

whether those additional materials related to conception and reduction to practice. *Id.* at 8.

From Carma's answers, Uber could reasonably rely on a critical date of February 12, 2007. The interrogatory was clear about for what it asked—"identification of the claim's date of conception [and] the date of first actual reduction to practice" of each claim—and in response, Carma identified no date earlier than February 12, 2007. Carma cannot now, so late in the game, assert an earlier date.

Carma's arguments to the contrary are unpersuasive. First, Carma argues that Uber never articulated a § 102(g) theory in its invalidity contentions or expert reports. Dkt. No. 327 at 8. Perhaps so, but that's a separate issue that has no bearing on Carma's disclosure obligations concerning conception and reduction to practice. The Court will consider any tardiness by Uber concerning its theory in due course.

Second, Carma asserts Uber had notice of, and access to, Carma's documents in discovery. Dkt. No. 327 at 8–9. True, but it was nonetheless Carma's obligation to identify the dates of conception and reduction to practice when responding to Uber's interrogatory. Uber would understandably need the documents to verify and, if necessary, challenge the dates, but it did not have an obligation to arrive at its own date of conception from those documents. In other words, it was not Uber's job to decide for Carma what dates Carma should contend the claimed inventions were conceived.

Third, Carma points to what it calls "a clear-burden shifting framework" of the Federal Circuit "when it comes to disclosure of priority evidence." Dkt. No. 327 at 9. When applying that framework, Carma says "[t]he patent challenger must present a *prima facie* case of invalidity, then the burden to come forward with evidence shifts to the patent owner to prove an earlier date." *Id.* (citing *Innovative Scuba Concepts, Inc. v. Feder Indus.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994)). But

that's an evidentiary issue rather than a discovery matter. None of Carma's cases support the notion that a patentee can defer, during discovery, disclosing specifics about dates of conception and reduction to practice until the alleged infringer asserts a competing § 102(g) theory of invalidity. *See, e.g.*, *Innovative Scuba*, 26 F.3d at 1115 (discussing the burdens in the context of resolving a post-trial motion to amend the judgment). *See also In Amkor Tech., Inc. v. ITC*, 692 F.3d 1250, 1258 (Fed. Cir. 2012) (reversing based on the incorrect application of a legal principle to the facts rather than a discovery-related issue); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) (discussing the burdens as applied by the trial court during a bench trial rather than discovery); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) (addressing the burdens of proof in the context of deciding a summary judgment motion); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1034–36 (Fed. Cir. 2001) (same). That, of course, would make no sense in the context of the procedural rules' bias toward full and open discovery.

Finally, Carma says this new date is important. It is, but it was important from the beginning of the case, not just after Uber filed its summary judgment motion. Carma had ample time to assert an earlier date of conception and reduction to practice, particularly when it produced documents expressly tied to those concepts months before Uber filed its motion. The blame for not doing so lies with Carma, not Uber.

## IV. CONCLUSION

Uber's first interrogatory was clear about the information it sought. Although Carma answered and supplemented those answers several times, none of those responses gave Uber any reason to believe the dates of conception and reduction to practice for the claimed inventions should be earlier than February 12, 2007. Because Carma had an obligation to clearly identify those dates in response to Uber's first interrogatory but didn't, the Court **GRANTS** Uber's Motion

to the extent that **IT IS ORDERED** that Carma may not introduce any evidence or make any argument that the date of conception of the asserted claims precedes February 12, 2007.

**SIGNED this 23rd day of October, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE